Duer, J.
We shall not decide, in this case, the important questions that were so learnedly discussed upon the hearing, namely, whether the English doctrine relative to pious and charitable uses was in force in this state, as a part of its common law, prior to the adoption of the revised statutes; and if so, whether the doctrine has not been wholly abrogated by the new-statutory provisions in relation to trusts and perpetuities. In giving our judgment in another cause, which has been heard by us during the present term, it will probably be necessary to state our deliberate views in relation to these grave and difficult *249 questions: but the grounds upon which we shall rest our decision, in the present case, render it unnecessary now to consider them.
When the powers of a corporation are not defined and restricted by its charter, or by any general law, its capacity to take, hold, and dispose of real estate is precisely the same as that of a natural person, and that such a corporation may hold lands, as a trustee, can no longer be considered a doubtful question. But when the purposes for which a corporation may take and hold real estate are expressed and enumerated in its charter, the maxim, “ expressio wnius est exclusio alterius ,” is invariably applied, and the enumeration is construed as a prohibition of all that it does not embrace. Such a corporation can hold lands for the purposes specified, and none other, and hence every question that can arise as to its legal capacity must be determined solely by a reference to the words of its charter. This principle of construction was adopted by our supreme court, in the early case of Jackson v. Hartwell, 18 John. 422, has since been followed in cases too numerous to be quoted, and is now placed beyond the reach of judicial discretion by an express provision in the revised statutes. (1 R. S. 602, § 1 and 4.)
The rector, wardens, and vestry of St. Clement’s Church are a religious society, incorporated under the general act providing for the incorporation of religious societies, (Laws of 1813, ch. 60; 3 R. S., 1st ed. page 292;) and the provisions of that act, so far as they are applicable to societies of the same denomination, that is, Protestant Episcopal Churches, constitute its charter. The provisions in the fourth section of the act are general, and apply to every religious society, incorporated under the law, and they confer upon each the power “ to purchase and hold real estate, and to demise, lease, and improve the same for the use of such church, congregation, or society, or other pious uses.” We do not doubt that the words “ for the use of such church or other pious uses,” are to be read in connexion with each of the preceding members of the sentence, and it is equally clear that they must be understood iri the same sense as applied to each. Consequently, every religious society may take lands by purchase to the same uses, for which, when no special use is ex *250 pressed in the conveyance, it may demise or lease, them, hnt it also follows that it is to snch uses that its capacity to hold lands in trnst must he restricted. The general words, “ pious uses,” 'are not to he understood in their broadest sense, so as'to authorize a religious society to hold lands to any use, however foreign to the purposes of its incorporation, that religion and charity may sanction. When lands are conveyed to such a corporation, without restriction, it may dedicate them, by virtue of its power of demising and leasing, to any specific use comprehended in the general objects of its incorporation; but should its trustees apply the rents and profits, by the terms of the lease, to any use or purpose foreign to the objects of the society, and from which its members, as such, would derive no benefit, they would abuse their power and violate their trust, and a court of equity would undoubtedly grant relief by avoiding their act. Hence the power of the corporation to hold lands by purchase, as a trustee, must be subject to the same limitation. The use, specified in the conveyance, must be one of the purposes for which the society was incorporated, and to which its trustees, in the exercise of their discretion, might lawfully apply the property, if generally conveyed. It is a further proof that the wordspious uses” were meant by the legislature to be understood in the restricted sense, that all the lands conveyed to a religious corporation, whether for the use generally of the society, or for some other pious use, are considered as a part of its whole estate, of which the income cannot exceed a limited amount; but, had the legislature intended that such a corporation might hold lands in trust for purposes entirely foreign to the objects of the society, as the land so held could not justly be considered as a part of its estate, it is reasonable to believe that the rents and profits would have been excepted from the limitation of its income.
Understanding, however, the words of the statute in the limited sense that we adopt, they still leave no room for questioning the validity of the conveyance, which has given rise to the present controversy, whether that conveyance be considered as the act of the original owner, Mrs. Hamilton, or of her immediate grantee, Francis Many. The use or trust expressed in the deed is the application of the rents and profits of the land con *251 veyed to the maintenance and support of the rector or the minister, for the time being, of St. Clement’s Church, a purpose to which, had none been expressed in the deed, the same rents and profits might lawfully have been applied by the trustees of the church. The support of its minister, is a duty that devolves upon every religious society, and to afford him that support, may justly be regarded as one of the objects of its incorporation. It is, therefore, a pious use, within the meaning of the statute.
The only question that remains to be considered is, whether the power of a religious corporation to hold lands, upon a trust of this description, has been taken away by the revised statutes, and we have no difficulty in saying that, in our judgment, the trust is just as valid as if the new provisions in the revised statutes, which are relied upon by the plaintiffs’ counsel, had never been adopted. We cannot believe that these provisions were designed to change or affect the powers of religious corporations; for, should they be thus construed, no grant of lands made to religious corporations, since the revised statutes have been in force, can be valid. Every such conveyance creates a perpetuity, and necessarily implies a trust, although none may be expressed, and hence those to whom the care and management of the temporalities of a religious corporation are entrusted, are, with strict propriety, denominated its ti’ustees. The trust, however, upon which they hold its property, it is certain, cannot be referred to any class of those cases which alone are authorized by the revised statutes. The general repealing act, which was adopted by the legislature at the close of the revision, enumerates all the acts and parts of acts that were meant to be superseded and repealed by the revised statutes. Ho mention of the act to provide for the incorporation of religious societies is there to be found; and we are satisfied that there would have been no such omission, had the repeal of that act, or of any of its provisions, been intended. It is an historical fact, that a revision of the act was reported by the revisers, and was not adopted by the legislature, from the conviction that it was expedient, for many reasons, to retain the law exactly in its present form. So far, therefore, from being repealed, it was virtually reenacted.
*252 Hence we rest in the conclusion that, under the existing law, real estate may be granted to any religious corporation, in trust, for any specific use or purpose comprehended in the general objects of its incorporation. It is a necessary consequence that the bill of the heirs at law, the plaintiffs in this suit, must be dismissed with costs.